UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 00-6172-CIV-ZLOCH

PSS INTERNET SERVICES, INC.,
a Florida corporation and
GEORGE KUHN, individually,

   Plaintiffs,

v.

JEREMY GREENIDGE, individually,
AMERICA DOT COM, INC., a
Tortola, British Virgin Islands
Corporation and GREATDOMAINS.COM,
INC., a California corporation,

   Defendants.

_____/



## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

  Defendants, America Dot Com, Inc., and Jeremy Greenidge, by and through

undersigned counsel, and pursuant to Rule 56 Fed.R.Civ.P., and Rule 7.5, Local Rules

for the United States District Court for the Southern District of Florida, respectfully move

this Court for entry of an order granting summary judgment in favor of defendants and

against plaintiffs, PSS Internet, Inc., and George Kuhn, on the Amended Complaint.

Additionally, America Dot Com and Jeremy Greenidge move this Court for entry of an

order granting summary judgment in their favor and against PSS on their respective

declaratory counterclaims. No genuine issue of material fact exists and defendants are

entitled to judgment on the Amended Complaint and the Counterclaims as a matter of

law. In support thereof, defendants state as follows.

## **Preliminary Statement**

This civil dispute is centered around the ownership of the internet domain name "America.com." In early 1994, Jeremy Greenidge ("Greenidge") created this domain name and since that time, has remained its sole and exclusive owner. Greenidge agreed to license the use of his domain name to PSS Internet, Inc., ("PSS"), a corporation Greenidge and Harold Millan ("Millan") subsequently founded. Millan and Greenidge further agreed that PSS would register "America.com" because of domain name registration restrictions in place in the early 1990s. Both Greenidge and Millan agreed and understood that, notwithstanding PSS's registration of "America.com", Greenidge remained its sole and exclusive owner. Subsequently, Greenidge and PSS entered into similar agreements in connection with Greenidge's other domain names: "universe.net" "worldwide.net" "earth.net" and "cosmos.net."

In 1994, George Kuhn became a minority shareholder of PSS. Kuhn was informed that PSS used the domain name as its corporate website. Kuhn admits that he was never told that PSS owned America.com. Rather, in accordance with PSS's terminable license agreement with Greenidge, Kuhn was told that PSS was using America.com as its domain name.

Unfortunately, over time, PSS was unable to compete with the overwhelming proliferation of internet start-up companies and ceased doing business in May of 1998. In October of 1998, PSS was dissolved. Accordingly, PSS's license for the use of "America.com" and Greenidge's other domain names terminated.

Over a year later, Greenidge decided to sell his domain name and transferred the registration of "America.com" to his new company, America Dot Com, Inc.

2

("America Dot Com"). After learning that "America.com" was going up for sale, Kuhn schemed to take a piece of the profit for himself. To this end, Kuhn embarked on a course of false and fraudulent behavior in an attempt to steal Greenidge's property, including, but not limited to, filing a false application for reinstatement on behalf of PSS with the State of Florida in March of 2000 by posing as a "director"; misrepresenting the ownership of "America.com" and Kuhn's status as a "director" of PSS to the registrar of domain names; repeating these same misrepresentations to the auctioneer of the domain name and threatening the auctioneer with legal action should it proceed with the pending sale of the domain name; fraudulently attempting to commence, as a director, shareholder meetings for PSS without corporate authority; and threatening the other shareholders in an attempt to intimidate them into misrepresenting their respective shares of PSS in an effort to oust Greenidge from his own company. When the other shareholders refused to go along with Kuhn's attempt to steal "America.com," Kuhn filed this frivolous five-count action in his individual capacity, and, purportedly, on behalf of PSS.

## History of Proceedings

The Amended Complaint invokes this Court's diversity jurisdiction to assert state common law claims for injunctive relief (Count I), fraud (Count II), conversion (Count III), and replevin (Count IV). Additionally, the Amended Complaint asserts a claim for breach of fiduciary duty (Count V) against Greenidge. All claims arise out of Greenidge's transfer of the domain name from PSS to America Dot Com.

On June 5, 2000, America Dot Com filed a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., grounded on well-settled Florida law which holds that a

3

shareholder cannot maintain an action for damages sustained solely and exclusively by a corporation. By Order dated June 26, 2000, this Court dismissed all of Kuhn's claims against America Dot Com and Count II, in which PSS purported to state a claim for fraud against America Dot Com.

On October 23, 2000, America Dot Com propounded its initial Interrogatories and its First Request for Production. Despite demand, Defendants were unable to produce any documents to support their unsubstantiated allegations regarding PSS's rights to "America.com" or Kuhn's status as a "director of PSS."

## Statement of Undisputed Facts

In the early 1990's, Greenidge and Millan informally agreed to enter into business together. (See Aff. of Harold Millan at ¶ 2 a copy of which is attached hereto as Exhibit "A"; and Aff. of Jeremy Greenidge at ¶ 2, a copy of which is attached hereto as Exhibit "B"). They decided to start an "internet corporation" specializing in internet access, websites and electronic mail addresses. (See Greenidge Aff. at ¶ 2; Millan Aff. at 2). Greenidge and Millan initially decided to name their new business "PSS Telecom" but prior to incorporation, changed the name to "PSS Internet Services, Inc." They agreed to use the domain name "pss.net" for its home web page. Because both Millan and Greenidge were involved in other businesses at the time, they decided to delay the incorporation of PSS until mid-1994. (See Greenidge Aff. at ¶ 2; Millan Aff. at ¶ 3).

In March of 1994, Greenidge created the internet domain name "America.com." (See Greenidge Aff. at ¶ 4; Millan Aff. at ¶ 4; Aff. of Aaron Gee at ¶ 5, a copy of which is attached hereto as Exhibit "C"; and Aff. of Michael Masterson at ¶ 3, a copy of which

4

is attached hereto as Exhibit "D"). At this time, the sole registrar for internet domain names, Network Solutions, Inc., ("NetSol")[1] prohibited the registration of "commercial" domain names, otherwise known as ".coms", in the name of an individual. Rather, NetSol required that all ".com" registration be effected in the name of a corporation. (See Masterson Aff. at ¶ 4; Millan Aff. at ¶ 5; Greenidge Aff. at ¶ 6).

Based on these restrictions, and realizing the marketing advantage of using "America.com" rather than "pss.net" as a corporate home page, Greenidge revealed his creation to Millan and offered to license the use of "America.com" to PSS in exchange for registration with NetSol in PSS's name. (See Greenidge Aff. at ¶ 5-7; Millan Aff. at ¶ 4-5). Millan agreed. Greenidge and PSS then entered into an oral license agreement in March of 1994 (the "License Agreement"). Pursuant to the License Agreement, Greenidge, as sole and exclusive owner of "America.com," licensed the use of the domain name to PSS. (See Millan Aff. at ¶ 5; Greenidge Aff. at ¶ 7).

Thus, PSS held legal title to the domain name for the beneficial owner, Greenidge. (See Millan Aff. at ¶ 5; Greenidge Aff. at ¶ 7). Greenidge and Millan agreed that Greenidge would, at all times, remain the sole and exclusive owner of the domain name "America.com". (See Millan Aff. at ¶ 5; Greenidge Aff. at ¶ 7). Accordingly, on March 29, 1994, Greenidge registered his domain name "America.com" with NetSol under PSS Telecom. (See Millan Aff. at ¶ 5; Greenidge Aff. at ¶ 6). Greenidge paid all

---

1 NetSol is a publicly traded Delaware corporation that has been selected by the United States government to provide Internet registry services for the second level domain names for certain top level domains, including ".com," ".org," ".net," and ".edu." This responsibility was established through a cooperative agreement between NSI and a federal agency, the National Science Foundation (NSF) effective January 1, 1993. In 1998, the cooperative agreement was amended to replace NSF with the United States Department of Commerce. Watts v. NetWork Solutions, Inc., 1999 WL 778589 (S.D. Ind. May 7, 1999).

fees in connection with the registration out of his own personal funds. (See Greenidge Aff. at ¶ 17; Millan Aff. at ¶ 14; Gee Affidavit at ¶ 6).

Shortly thereafter, Greenidge and Millan changed their company's name to PSS Internet Services, Inc. and incorporated in the State of Florida on April 13, 1994. At this time, Greenidge, Millan and Fernando Pinero[2] were the sole directors of PSS. (See Millan Aff. at ¶ 6; Greenidge Aff. at ¶ 8). Greenidge served as president and chief executive officer, while Millan served as secretary/treasurer. (See Millan Aff. at ¶ 6; Greenidge Aff. at ¶ 8). Millan and Greenidge were the sole shareholders at the time of incorporation. (See Millan Aff. at ¶ 6; Greenidge Aff. at ¶ 8).

Greenidge hired Aaron Gee ("Gee") and Michael Masterson ("Masterson") to provide technical support for PSS. (Gee Aff. at ¶ 2; Masterson Aff. at ¶ 2). Gee eventually helped Greenidge with the day-to-day operations of PSS while Masterson provided technical support. (See Gee Aff. at ¶ 3; and Masterson Aff. at ¶ 2).

In June and July of 1994, Millan and Greenidge entered into a series of license agreements in connection with a number of domain names created by Greenidge. (See Millan Aff. at ¶ 7; Greenidge Aff. at ¶ 9). These agreements were identical to the "America.com" License Agreement: Greenidge agreed to license the use of the domain names "universe.net" "earth.net" "worldwide.net" and "cosmos.net" to PSS in exchange for PSS's registration of the names with NetSol. (See Millan Aff. at ¶ 7; Greenidge Aff. at ¶ 9). Additionally, as with the "America.com" License Agreement, it was agreed and

---

2    In response to a document request for all documents supporting plaintiffs' claim to "America.com," plaintiffs produced a receipt dated April 2000 from NetSol for a registration renewal of "America.com." In light of the fact that Greenidge has paid registration fees for "America.com" from the time fees were due through today, it is clear that this April 2000 payment was a mere afterthought by Kuhn to bolster his claim. In fact, because Greenidge previously paid for registration of "America.com" through February of

6

understood by Greenidge and Millan that PSS held legal title to these domain names for the beneficial owner, Greenidge. (See Millan Aff. at ¶ 7; Greenidge Aff. at ¶ 9). Greenidge and Millan agreed that Greenidge would, at all times, remain the sole and exclusive owner of each of these domain names. (See Millan Aff. at ¶ 7; Greenidge Aff. at ¶ 9).

From the date of the initial registration with NetSol of "America.com" "universe.net" "worldwide.net" "earth.net" and "cosmos.net" through today, Greenidge has paid for all registration and maintenance fees relating to these names out of his personal funds. No PSS funds have ever been used in association with the domain names.[3] (See Millan Aff. at ¶ 14; Greenidge Aff. at ¶ 17; Gee Aff. at ¶ 6).

In late 1994, Charles Henderson ("Henderson") and Kuhn became minority shareholders of PSS. (See Millan Aff, at ¶ 8; Greenidge Aff. at ¶ 10 Deposition of George Kuhn at p. 13). Kuhn purchased 125 shares. (Kuhn Depo. at p.18). As noted on his certificate of shares, the common stock of PSS consists of 500 shares. Thus, Kuhn bought 25% of the shares of PSS. Henderson purchased 100 shares, or 20% of PSS. (See Millan Aff. at ¶ 8; Greenidge Aff. at ¶ 10). Greenidge, meanwhile, owned 255 shares, or 51%, while Millan owned 20 shares, or 4%. (See Millan Aff. at ¶ 8; Greenidge Aff. at ¶ 10). At all times during PSS's corporate existence, Greenidge has remained the majority shareholder. (See Millan Aff. at ¶ 8; Greenidge Aff. at ¶ 10).

---

2002, NetSol advised Kuhn that his $70 payment will not cover registration of the name until February 13, 2002.

3    In response to a document request for all documents supporting plaintiffs' claim to "America.com," plaintiffs produced a receipt dated April 2000 from NetSol for a registration renewal of "America.com." In light of the fact that Greenidge has paid registration fees for "America.com" from the time NetSol began charging fees, through today, it is clear that this April 2000 payment was a mere afterthought by Kuhn to bolster his claim. In fact, because Greenidge previously paid for registration of "America.com" through

7

At the time of their initial investments, both Henderson and Kuhn were informed that PSS specialized in providing services related to internet access; that PSS was not merely a vehicle for holding domain name registrations, and that PSS's use of the domain names "America.com" "universe.net" "worldwide.net" "earth.net" and "cosmos.net" was subject to license agreements between PSS and Greenidge. They were specifically informed that the domain names remained the sole and exclusive property of Greenidge. (See Millan Aff. at ¶ 8; Greenidge Aff. at ¶ 10).

During his deposition, Kuhn testified that, prior to his investment in PSS, the domain name America.com was referred to only twice: Millan told him "that "America.com" was the name of the domain for PSS," (Kuhn Depo. at p. 24), and Greenidge said "by buying into this you're buying into America.com which is going to be some pretty pricey real estate.... I didn't think you can lose by buying this because of the name America.com." (Id.). Kuhn also testified that he was told that his investment was to be used to expand PSS's operations into the Orlando, Florida area. (Id. at p. 27).

It is undisputed that Kuhn was never told that America.com belonged to PSS. Rather, he was told, consistent with PSS's license, that America.com was PSS's "domain name," and would be used as its website. Greenidge, at the time, believed that PSS could grab a large market share with the help of the name recognition of "America.com." Unfortunately, despite the catchy name, PSS was unable to compete. (Greenidge Dec. at ¶ 12). Kuhn further admitted that he has no knowledge as to how

February of 2002, NetSol advised Kuhn that his $70 payment will not cover registration of the name until February 13, 2002.

8

PSS acquired its right to use America.com or any other such interest in the domain name. (Kuhn Depo. at p. 40).

In August of 1995, PSS was administratively dissolved but continued to do business. Based on its continued operation, Millan and Greenidge, as the sole directors, agreed to reinstate PSS on September 24, 1997. (See Millan Aff. at ¶ 9; Greenidge Aff. at ¶ 11). Henderson, Kuhn, Millan and Greenidge remained the sole shareholders throughout the existence of PSS with their initial share percentages. (See Millan Aff. at ¶ 9).

At no time was Kuhn promised a seat on the board of directors or elected or appointed to the board of directors of PSS. (See Millan Aff. at ¶ 11; Greenidge Aff. at ¶ 14). At no time did Millan and Greenidge, as PSS's sole directors, ever agree to appoint or elect Kuhn as a director of PSS. (See Millan at ¶ 11; Greenidge at ¶ 14). At no time did Greenidge, as the majority shareholder of PSS, or Millan ever agree to or vote their shares in favor of Kuhn as a director of PSS. (Id.) Kuhn admitted during his deposition that no shareholder or board meetings were ever held in which he was elected as a director. (Kuhn Depo. at p.29) He further admitted that neither Greenidge nor Millan ever stated that Kuhn was a director of PSS. (Id. at pp. 28, 34). To this day, Kuhn remains simply a minority shareholder. (See Millan Aff. at ¶ 11; Greenidge Aff. at ¶ 14).

PSS ceased doing business in May of 1998 and was administratively dissolved on October 16, 1998. (See Millan Aff. at ¶ 10; Greenidge Aff. at ¶ 12). Upon the administrative dissolution of PSS, all license agreements between Greenidge and PSS terminated and PSS no longer had any interest or right to "America.com" "universe.net"

9

"worldwide.net" "earth.net" or "cosmos.net." (See Millan Aff. at ¶ 10; Greenidge Aff. at ¶ 13).

In November of 1999, as owner of the domain name and as director and majority shareholder of PSS, and in accordance with his agreement with PSS's other director, Millan, Greenidge transferred the registration of "America.com" from PSS to America Dot Com. (See Millan Aff. at ¶ 15; Greenidge Aff. at ¶ 18). America Dot Com then contracted with Great Domains.com for the sale of the domain name. (Greenidge Aff. at ¶ 18, exhibit 4).

After learning of the pending sale of "America.com", Kuhn wrote to NetSol and Great Domains.com, claiming to be a director of PSS and claiming that Greenidge was a mere "minority shareholder" without any authority to transfer the domain name. (Kuhn Depo. at pp. 72-75 and Exhibits 4 & 5). As a result of Kuhn's false representations and unauthorized interference, NetSol placed "America.com" back under the name of PSS, pending receipt of a bilateral agreement, arbitration agreement or court order. (Kuhn Depo. at p. 76).

On January 12, 2000, Kuhn, again posing as a director of PSS, purported to call a meeting of the Board of Directors and shareholders of PSS for January 14, 2000. (See Greenidge Aff. at ¶ 19; Millan Aff. at ¶11). The Notice of Meeting, addressed to Millan, Greenidge and Henderson, stated that the purpose of such meeting was to "elect officers and directors, to reinstate the corporation . . . and to vote to take such action as necessary to reclaim the domain names of america.com, earth.net, [and] worldwide.net . . . " (See Greenidge Aff. at ¶ 19; Millan Aff. at ¶ 11). At the beginning of this "meeting," Henderson gave Kuhn a proxy for his 100 shares, bringing Kuhn's

10

voting share to 225 of 500 shares or 45%. (See Greenidge Aff. at ¶ 19; Millan Aff. at ¶ 11). However, Greenidge advised Kuhn that, because Kuhn was not a director, and because the meeting was not called in accordance with the by-laws of PSS, the meeting was improper and unauthorized and would not be held. (See Greenidge Aff. at ¶ 19; Millan Aff. at ¶ 11; Kuhn Depo. at p. 60). Kuhn testified that no vote was taken at this meeting. In fact, Kuhn admitted that "it was not a meeting in any official capacity." (Kuhn Depo. at p. 61). In any event, with only 45% of the shares, Kuhn could not effect any changes in PSS without Greenidge.

Despite his failure to remove Greenidge, the majority shareholder, from PSS's board of directors, Kuhn filed this action on February 2, 2000, signing on behalf of PSS. Kuhn now admits that the shareholders of PSS never voted in favor of initiating or prosecuting this lawsuit on behalf of PSS. (Kuhn Depo. at p. 81). He further admitted that the directors of PSS never authorized the lawsuit on behalf of PSS. (Id.) Three days after suit was filed, Kuhn wrote to Millan and Henderson asking for their help in reinstating PSS and in his suit against Greenidge. (See Millan Aff. at ¶ 12, exhibit 2; Kuhn Depo. at p. 66). Kuhn admitted in this correspondence that **"[t]he only people that can sign the corporate paperwork are Harry [Millan] and Jeremy [Greenidge]."** (See Millan Aff. at ¶ 12, exhibit 2) (emphasis added). He also attempted to induce Millan to claim 35% of the ownership of PSS, despite the fact that Millan only holds 4% of PSS's stock. (Id.).

Over a month later, despite his earlier admission that he was not authorized to act on behalf of PSS, Kuhn filed an application to reinstate PSS with the Florida

11

Department of State. Kuhn listed himself, Millan and Henderson as the sole directors,
excluding Greenidge. (Kuhn Depo. at pp. 77-78 and Exhibit 6). Kuhn now admits that
he was aware of the fact that he was not a director of PSS at the time he signed the
Application for Reinstatement. (Kuhn Depo. at pp. 78-79). He further admits that he
knew Charles Henderson was not a director at the time that Kuhn listed Henderson as a
director on the Application for Reinstatement. (Id. at p. 79). Kuhn also admits that he is
the only shareholder of PSS who consented to the reinstatement of PSS and that the
reinstatement was not authorized by the directors or shareholders of PSS. (Id.).

## Standard of Review

Pursuant to Rule 56, Fed.R.Civ.P., an order granting summary judgment is
appropriate where the movant establishes that there is an absence of evidence to
support the non-movant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
While the Court must hear the evidence and all permissible fact inferences in a light
most favorable to the non-moving party, the non-movant "must do more than simply
show that there is some metaphysical doubt as to the material fact." Matsushita Elec.
Ind. Co. v. Zenith Radio, 475 U.S. 574. 586-87 (1986). *The mere presence of an
alleged factual dispute between the parties does not make summary judgment
improper; rather, a genuine issue of material fact must exist for a court to deny
summary judgment.* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)
(emphasis added).

In determining whether this evidentiary threshold has been met, the Court "must
view the evidence presented through the prism of the substantive evidentiary burden"

12

applicable to the particular cause of action before it. Id. at 253. If the non-moving party fails to "make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the Court must enter summary judgment for the moving party. Id. at 249; Celotex, 477 U.S. at 323.

Accordingly, in response to a properly supported motion for summary judgment, "an adverse party *may not rest upon the mere allegations or denials* of the adverse party's pleadings, but ... must set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Thus, PSS and Kuhn must come forward with "**specific factual evidence** sufficient to establish the existence of each element essential" to its case on which they bear the burden at trial. Celotex, 477 U.S. at 320 (emphasis added); Fed.R.Civ.P. 56(e).

## Summary of Argument

Greenidge and America Dot Com are entitled to summary judgment on all claims asserted against them because no genuine issue of fact exists regarding Greenidge's status at the sole and exclusive owner of "America.com" "universe.net" "worldwide.net" "earth.net" and "cosmos.net" and PSS' terminable license to use such names. For this reason, America Dot Com and Greenidge are further entitled to judgment as a matter of law on their respective declaratory counterclaims against PSS.

Moreover, no genuine issue of fact exists regarding Kuhn's status as a mere shareholder of PSS. Indeed, Kuhn has admitted that he was not authorized to file this suit on behalf of PSS and was aware at the time of filing that the only persons so authorized were Greenidge and Millan, PSS's sole directors, who, Kuhn admits, did not

13

consent to nor authorize the filing of this action. Therefore, PSS lacks the requisite corporate authority as a matter of law to maintain this action. Accordingly, America Dot Com and Greenidge are entitled to judgment as a matter of law on all claims asserted by PSS.

Finally, Greenidge is entitled to judgment as a matter of law on all claims asserted against him by Kuhn because, under well-settled Florida law, all such claims belong solely and exclusively to PSS.

### Argument

## 1.    AMERICA DOT COM AND GREENIDGE ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AGAINST PSS ON THE AMENDED COMPLAINT AND COUNTERCLAIMS.

America Dot Com and Greenidge filed declaratory action counterclaims against PSS regarding the ownership of and rights to the domain names. Specifically, America Dot Com seeks a declaration regarding the ownership of "America.com" while Greenidge seeks a declaration relating to the ownership of "universe.net", "earth.net", "cosmos.net", and "worldwide.net."

The only people who were involved with PSS during the time of its inception are Greenidge and Millan.    Both testify that the domain names "America.com" "universe.net", "earth.net", "cosmos.net", and "worldwide.net" belong solely and exclusively to Greenidge.    Both testify that PSS had a mere license to use these domain names but, at no time, did PSS ever "own" the domain names.    Both testify that PSS expended no funds in connection with the registration and maintenance of the domain names. Michael Masterson, who was instrumental in setting up PSS and Aaron

14

Gee, who joined PSS shortly after its inception, and prior to Kuhn, also testify that "America.com" belongs to Greenidge.

Kuhn, who became a minority shareholder of PSS in 1994, was not privy to the discussions and agreements made in 1993 when Greenidge created the name and offered its use to Millan. Kuhn was not involved in the day-to-day operations of PSS. Kuhn admits that he was never told that America.com was owned by PSS. Rather, he testified at his deposition that he was merely told that PSS used America.com as its domain name and that the founders of PSS, Greenidge and Millan, believed that PSS's use of America.com provided PSS with great business potential. In fact, with regard to "earth.net" "worldwide.net" and "universe.net," Kuhn admits that he was told only that PSS registered these names. He was not aware that PSS registered "cosmos.net" and therefore, testified that PSS had no "claim" to "cosmos.net." Again, Kuhn testified that he was never told that PSS owned any of these domain names. In fact, Kuhn stated that he had no knowledge of how PSS acquired its rights to America.com.

It is important to note that, according to his deposition testimony, Kuhn did not refute nor contradict the following facts: (1) Greenidge is the sole and exclusive owner of America.com, universe.net, worldwide.net, earth.net and cosmos.net; (2) the only rights or interest held by PSS in these domain names was pursuant to a terminable license agreement entered into by PSS, Millan and Greenidge; and (3) Millan and Greenidge agreed to terminate the license agreements with PSS upon PSS's administrative dissolution and cessation of operations in 1998.

Thus, plaintiffs have not, and simply cannot, present any evidence to contradict the fact that PSS's right to use the domain names was acquired by way of a license

15

agreement with their true owner, Greenidge. Because plaintiffs "*may not rest upon the mere allegations or denials* of the adverse party's pleadings, but ... must set forth *specific facts* showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), America Dot Com and Greenidge are entitled to summary judgment as a matter of law on the Amended Complaint and their respective Counterclaims regarding the ownership of the domain names.

## 2.    AMERICA DOT COM IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL CLAIMS ASSERTED IN THE AMENDED COMPLAINT.

### A.    *PSS Lacks the Requisite Corporate Authority to Maintain this Action.*

A corporation is a creature of statute without power to act except in strict compliance with Florida corporate law: "all corporate powers *shall* be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of *its board of directors* . . ." Fla. Stat. § 607.0801(2) (emphasis added). It is well established that the board of directors represents the "corporate body" holding exclusive authority to conduct and manage corporate affairs, including the filing of a legal action. Mease v. Warm Mineral Springs, Inc., 128 So. 2d 174 (Fla. 2d DCA 1961). Shareholders are without power to represent a corporation. Id.

It is undisputed that the Amended Complaint in this action was not filed under the authority of PSS's board of directors or shareholders. (Kuhn Depo. at p. 81). At all relevant times, Millan and Greenidge served as the sole directors of PSS. (See Millan Aff. at ¶ 9; Greenidge Aff. at ¶ 11).

16

Only with and under the authority of its board of directors can PSS file an action.

Kuhn himself has admitted that he does not have the authority to act on behalf of PSS.

(Kuhn Depo. at p. 81).    Accordingly, because PSS's sole directors, Millan and

Greenidge, did not institute or consent to this action, (Id.), PSS lacks the requisite

corporate authority to maintain this action. Thus, as a matter of law, America Dot Com

and Jeremy Greenidge are entitled to judgment against PSS on all claims asserted by

PSS in the Amended Complaint. (See Greenidge Aff. at ¶ 14).

## 3.    JEREMY GREENIDGE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL CLAIMS ASSERTED BY GEORGE KUHN.

### A.    *Greenidge is Entitled to Judgment as a Matter of Law on all Counts Because Florida Law Holds that a Shareholder Cannot Maintain a Claim for Damages Sustained Solely by a Corporation.*

Kuhn sued Greenidge on five counts, each of which involves allegations of an

injury sustained solely by PSS.    In Count I, Kuhn seeks injunctive relief against

Greenidge, relating to Greenidge's use of the domain name. (Amended Complaint at p.

5). In Count II, Kuhn asserts fraud, arising out of Greenidge's registration of the domain

name.  (Id. at ¶¶ 32-34). In Count III, Kuhn asserts conversion of the domain name

alleged to belong solely to PSS and of a personal computer alleged to belong to Kuhn

and valued at $5,000.  (Id. at ¶ 40). In Count IV, Kuhn asserts a claim for replevin,

seeking possession of the domain name and the personal computer. (Id. at ¶¶ 41-49).

In Count V, Kuhn asserts breach of fiduciary duty, arising out of Greenidge's

"possession" of PSS's "corporate assets."  (Id. at ¶¶ 50-54). Interspersed throughout

these counts, are repeated allegations that PSS is the rightful owner of the domain

17

name "America.com" and that the alleged unauthorized transfer of the domain name resulted in damages to PSS.

Based on these allegations of ownership, all claims relating to the domain name belong solely to PSS. The damages alleged by Kuhn, individually, in Counts I, II and V arise solely from his status as a shareholder of PSS. Indeed, nowhere in the Amended Complaint does Kuhn, individually, claim to own any interest in "America.com." Indeed, Kuhn admitted that his damages are identical to PSS's and arise solely from his status as a shareholder:

Mr. Davis, defense attorney:

The action has been brought in your name individually and PSS Internet as a corporation. Can you describe for me the difference between the damages you claim individually and the ones that you claim should go to PSS Internet?

George Kuhn:

PSS Internet should continue to be the owner of America Dot Com and the other three domain names. PSS Internet, as a corporation, with [the domain names] is likely very valuable. Without them, it's worthless and since I have 25 percent stake in PSS Internet, that's my damages, too.

(Kuhn Depo. at pp. 87-88).

As such, each of Kuhn's individual claims against Greenidge fail as a matter of law, for it is well-settled in Florida that a shareholder of a corporation does not have the right to maintain an action in his individual name for damages sustained by the corporation. AmSouth Bank v. Wynne, 772 So. 2d 574 (Fla. 1st DCA 2000); McKinney-Green, Inc. v. Davis, 606 So. 2d 393, 396 (Fla. 1st DCA 1992) (dismissing claims and holding that individual action cannot be maintained by shareholder in his own name or

18

corporation's name, but must be brought solely by the corporation); Alario v. Miller, 354 So. 2d 925, 926 (Fla. 2d DCA 1978); Grandin Ind., Inc. v. Fla. Nat'l Bank at Orlando, 267 So. 2d 26, 30 (holding that shareholder failed to state a cause of action because shareholder has no right to sue for damages to the corporation, except in a derivative action); James Talcott, Inc. v. McDowell, 148 So. 2d 36 (Fla. 3d DCA 1962).

Therefore, Greenidge is entitled to judgment as a matter of law on Counts I, II and V, which allege damage solely to PSS. Similarly, Greenidge is entitled to judgment as a matter of law on Counts III and IV to the extent that such claims purport to allege a cause of action on behalf of Kuhn for damages allegedly resulting from the transfer of the domain name "America.com," as these claims likewise belong solely to PSS.

## B. *Greenidge is Entitled to Judgment as a Matter of Law on Counts III and IV based on this Court's Lack of Subject Matter Jurisdiction.*

The only injury allegedly sustained by Kuhn, individually, is found in Counts III and IV where Kuhn alleges the "conversion" of a personal computer valued at $5,000.00. (Amended Complaint at ¶¶ 40-49). Because this action is based on the Court's diversity jurisdiction, however, Kuhn is required to meet the requisite jurisdictional amount of $75,000.00. See 28 U.S.C. § 1332.

According to the Amended Complaint, the personal computer is valued at only $5,000.00. This amount is woefully short of the requisite $75,000.00 amount required to invest this Court with subject matter jurisdiction over this diversity action. Obviously, Kuhn cannot avail himself of the damages alleged on behalf of PSS in order to meet the requisite amount as aggregation of damages is not permitted. Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc., 844 F. Supp. 1512 (M.D. Fla. 1994) (in diversity

19

case, each plaintiff must independently meet amount in controversy requirement; individual claims for damages cannot be aggregated to satisfy amount in controversy). Accordingly, because Kuhn fails to allege, and indeed, cannot allege the requisite amount in controversy, Greenidge is entitled to judgment on Counts III and IV against Kuhn.

## **Conclusion**

Based on the record evidence, and in particular, the deposition testimony of Plaintiff, George Kuhn, it is undisputed that PSS does not own, and never has owned, the domain names America.com, worldwide.net, earth.net, universe.net and cosmos.net. Rather, all evidence supports the fact that Greenidge is the sole and exclusive owner of these domain names. Accordingly, America Dot Com and Greenidge are entitled to judgment as a matter of law on the Amended Complaint and their respective Counterclaims.

Furthermore, it is undisputed that PSS lacks the corporate authority to maintain this action. Finally, it is undisputed that Kuhn is claiming damages which belong solely to PSS. Therefore, Kuhn, a minority shareholder of PSS, cannot, as a matter of law, maintain his individual action. Consequently, his claim for personal damages in the amount of $5,000 must fail for lack of subject matter jurisdiction.

**WHEREFORE**, based on the foregoing authorities, America Dot Com, Inc., and Jeremy Greenidge respectfully request this Court enter an order:

(1) granting summary judgment in favor of America Dot Com, Inc., and Jeremy Greenidge and against PSS Internet Services, Inc., on all claims asserted by PSS Internet, Inc., in the Amended Complaint;

(2) granting summary judgment in favor of Jeremy Greenidge and against George Kuhn on all claims asserted by George Kuhn in the Amended Complaint;

(3) granting summary judgment in favor of America Dot Com, Inc., and against PSS Internet Services, Inc., on America Dot Com, Inc.'s Counterclaim, and declaring that (a) the domain name "America.com" belongs solely and exclusively to America Dot Com and; (b) PSS has no rights whatsoever to the domain name "America.com";

(4) granting summary judgment in favor of Jeremy Greenidge and against PSS Internet Services, Inc., on Jeremy Greenidge's Counterclaim, and declaring that (a) the domain names "universe.net", "worldwide.net", "earth.net" and "cosmos.net" belong solely and exclusively to Jeremy Greenidge and; (b) PSS has no rights whatsoever to these domain names; and

(5) granting such further relief as this Court deems just and proper.

> BUCHANAN INGERSOLL, P.C.
> Attorneys for America Dot Com
> and Jeremy Greenidge
> 2100 Bank of America Tower
> 100 Southeast Second Street
> Miami, Florida 33131
> (305) 347-4080 Fax: 347-4089
>
> WILLIAM E. DAVIS, ESQ.
> Florida Bar No.: 191680
> JILL A. COOK-EDWARDS, ESQ.
> Florida Bar No.: 0115411

21

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that a true copy of the foregoing was mailed this ___7___

day of March, 2001 to: John C. Rayson, Esq., Law Offices of John C. Rayson, Second

Floor, 2400 East Oakland Park Boulevard, Fort Lauderdale, FL 33306.

JILL A. COOK-EDWARDS

22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 00-6172-CIV-ZLOCH

PSS INTERNET SERVICES, INC.,
a Florida corporation and
GEORGE KUHN, individually,

       Plaintiffs,

v.

JEREMY GREENIDGE, individually,
AMERICA DOT COM, INC., a
Tortola, British Virgin Islands
Corporation and GREATDOMAINS.COM,
INC., a California corporation,

       Defendants.

_____/

## AFFIDAVIT OF HAROLD MILLAN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

State of       )
              ) ss
County of     )

HAROLD MILLAN, being duly sworn, deposes and states:

1.    I am a director and shareholder of PSS Internet, Inc., ("PSS"). I submit this affidavit in support of the Motion for Summary Judgment filed by Jeremy Greenidge and America Dot Com, Inc. This affidavit is based upon my personal knowledge. If called upon, I will testify to these matters.

2.    In 1993, Jeremy Greenidge ("Greenidge") and I began discussing the idea of forming an "internet corporation," providing dial-up internet access, corporate internet access, websites and electronic mail addresses.

**EXHIBIT "$\underline{A}$"**

3.     We initially agreed on the name "PSS Telecom" for our soon-to-be-founded corporation and "pss.net" as the domain name for PSS Telecom's home page. We later changed the name to PSS Internet Services, Inc. ("PSS"). Because we both were involved with other matters at this time, we decided to wait a year before opening PSS for business.

4.     In March of 1994, Greenidge contacted me and told me of his new creation of an internet domain name called "America.com."

5.     Greenidge and I then entered into an oral agreement regarding our new corporation's future use of this domain name (the "License Agreement"). Pursuant to the License Agreement, Greenidge licensed the use of the domain name to PSS. Due to restrictions on ".com" registration with Network Solutions, Inc. ("NetSol"), requiring registration under a corporate or business entity, Jeremy and I agreed to register "America.com" in the name of PSS. On March 29, 1994, Greenidge registered "America.com" with NetSol under the name PSS. I understood at all times that "America.com" belonged solely to Greenidge, and that PSS merely held legal title pursuant to the License Agreement for Greenidge.

6.     On April 13, 1994, Greenidge and I incorporated PSS Internet Services, Inc. ("PSS"), in the state of Florida. Greenidge and I were the sole shareholders of PSS at this time. I was also a director and the Secretary/Treasurer. Greenidge was a director and served as President and CEO. Fernando Pinero was the only other director. Mr. Pinero resigned shortly after PSS's incorporation. (See Articles of Incorporation dated April 13, 1994, a copy of which is attached hereto as Exhibit "1").

7.     In June and July of 1994, Greenidge and I entered into four more license agreements in connection with his domain names "universe.net", "earth.net", "worldwide.net" and "cosmos.net". These license agreements were identical to the "America.com" License Agreement. PSS registered and used the domain names and held legal title for the beneficial owner, Greenidge. Greenidge, of course, remained the sole and exclusive owner of these names.

8.     In 1995, Charles Henderson ("Henderson") and George Kuhn ("Kuhn") became minority shareholders of PSS. Out of the 500 shares of PSS's common stock, Kuhn purchased 125 and Henderson purchased 100. Greenidge owned 255 or 51% of PSS, while I held 20 shares, or 4% of PSS. From the 1995 initial investments of Kuhn and Henderson, these stock ownership percentages did not change. (See Certificates of Stock, attached hereto as Exhibit 2). Prior to selling shares of PSS to Henderson and Kuhn, Greenidge and I informed them that PSS provided services related to internet access, not domain name registration. We further informed them that PSS had a license to use the domain names "America.com,", "universe.net", "earth.net", "worldwide.net" and "cosmos.net" but that these names remained the sole and exclusive property of Greenidge. Kuhn and Henderson did not take part in PSS's day-to-day operations.

9.     In August of 1995, PSS was administratively dissolved. On September 24, 1997, Greenidge and I reinstated PSS and were, as before, the sole directors. (See Application of Reinstatement dated September 24, 1997, a true copy of which is attached hereto as Exhibit 3). Throughout PSS's existence, Kuhn, Henderson,

Greenidge and I remained the sole shareholders and Greenidge and I remained the sole directors.

10.     On October 16, 1998, PSS was administratively dissolved.  Greenidge and I agreed not to reinstate PSS as it had ceased doing business in May of 1998. Based on this dissolution and the cessation of PSS's operations, PSS's licenses for use of Greenidge's domain names terminated.

11.     At no time was George Kuhn a director of PSS.  At no time did Greenidge and I, as PSS's sole directors, ever agreed to, elect or appoint Kuhn as a director.  At no time did Greenidge or I vote as shareholders to appoint or elect Kuhn as a director of PSS.  At no time was Kuhn ever promised a seat on the board of directors.  Kuhn's January 12, 2000 attempt to call a meeting of PSS's board of directors, (see Exhibit 3), was unauthorized.  No formal meeting was held at this time, and Greenidge informed Kuhn that Kuhn was not authorized to call a directors' meeting because Kuhn was not a director.

12.     On February 5, 2000, I received electronic mail from Kuhn.  It was addressed to me and Henderson.  (See Electronic Mail from Kuhn to Henderson and Miller, dated February 5, 2000, attached hereto as Exhibit 4).  In this letter, Kuhn admitted that Greenidge and I were the only individuals authorized to sign on behalf of PSS because we were the sole directors.  Kuhn also asked me to claim 35% of PSS's shares, which I refused to do because I only own 4%.

13.     At no time after October of 1998 did I sign or authorize the reinstatement of PSS.  Rather, Greenidge and I, as PSS's sole directors, affirmatively agreed not to reinstate PSS but rather to wind down.

4

14.    At no time were PSS's funds used to pay for registration fees for any of Greenidge's domain names. Rather, Greenidge paid for all registration fees out of his own personal accounts.

15.    In November of 1999, Greenidge, as owner of "America.com" and in accordance with our prior agreement, transferred the registration of "America.com" from PSS to America Dot Com. Inc.

16.    At no time did PSS ever pay registration fees to NetSol or to any other entity for the registration of "America.com," or any other domain name. Greenidge paid all fees associated with his domain names out of his personal account.

FURTHER AFFIANT SAYETH NOT.

5

Harold Millan

STATE OF _____

COUNTY OF _____

)
)  ss:
)

Signature of Notary Public

State of _____

_____

Print, Type or Stamp Commissioned Name
of Notary Public

Personally Known_____or Produced Identification _____
Type of Identification Produced: Driver's License _____ Other _____

6

# ARTICLES OF INCORPORATION

## ARTICLE I

### NAME

THE NAME OF THIS CORPORATION IS: PSS INTERNET SERVICES, INC.,
and the mailing address is 5195 N.W. 74th Avenue, Miami, FL
33166.

## ARTICLE II

### DURATION

This corporation shall have a perpetual existence, unless
dissolved according to law.

## ARTICLE III

### PURPOSE

This corporation is organized for the purpose of transacting
any or all business for which corporation may be incorporated
under the Florida General Corporation Act.

### ARTICLE IV

EXHIBIT 1 to EXHIBIT "A"

## ARTICLE V

### INITIAL REGISTERED OFFICE & AGENT

The street address of the initial registered office and principal place for conducting business is 5195 N.W. 74th Avenue, Miami, FL 33166, and the initial registered agent is Fernando S. Pinero, at 5195 N.W. 74th Avenue, Miami, FL 33166

### ARTICLE VI

### INITIAL BOARD OF DIRECTORS

This corporation shall have (3) (three) directors initially. The number of director(s) may be either increased or decreased from time to time by the By-Laws, but shall never be less than one. The name and address of the initial directors of this corporation is:

Jeremy Greenidge
5195 N.W. 74th Avenue
Miami, FL 33166

Harold J. Millan
5195 N Y. 74th Avenue
Miami, FL 33166

Fernando S. Pinero
5195 N.W. 74th Avenue
Miami, FL 33166

INDEMNIFICATION

To the full extent permitted by the law, the corporation shall indemnify each person made or threatened to be made a party to any threatened, pending or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative (including one in the right of the corporation to procure a judgment in its favor) by reason of the fact that her or his testator or intestate, is or was a director,

officer, employee or agent of the corporation or served any
other corporation, partnership, joint venture, trust, or
other enterprise in any capacity at the request of the
corporation.

## ARTICLE VIII

### INCORPORATED

The name and the address of the person signing these articles
is:

Fernando S. Pinero
5195 N. W. 74th Avenue
Miami, FL 33166

## ARTICLE IX

### OFFICERS

The officers of this corporation shall be as follows:

Jeremy Greenidge            President

Harold J. Millan            Treasurer

CERTIFICATE DESIGNATING PLACE OF BUSINESS OR DOMICILE FOR THE
SERVICE OF PROCESS WITHIN  THIS STATE, NAMING AGENT UPON WHOM
PROCESS MAY BE SERVED.

---

In pursuance of Chapter 48.091 Florida Statutes, the
following is submitted, in compliance with said Act:

First: That PSS INTERNET SERVICES, INC. desiring to
organize under the laws of the State of Florida with its
principal office, at 5195 N.W. 74th Avenue, City of Miami,
County of Dade, State of Florida, has named Fernando S.
Pinero located at 5195 N.W. 74 Avenue, City of Miami, County
of Dade, State of Florida, as its agent to accept service of
process of within this state.

Having been named to accept service of process of the
above stated corporation, at place designated in this
certificate, I hereby accept to act in this capacity, and
agree to comply with the provision of said Act relative to
keeping open said office.



STATE OF FLORIDA)
COUNTY OF DADE)

BEFORE ME, a notary public authorized to take acknowledgments in the state and county set forth above personally appeared Fernando S. Pinero known to me and known by me to be the person who executed the foregoing Articles of incorporation, and he acknowledged before me that he executed those Articles of Incorporations.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, in the state and county aforesaid this 28th day of March 1994.



ALEXIS NEGRO
Notary
Public
STATE OF FLORIDA
My Comm Exp 8/5/95
BONDED

004

ORGANIZED UNDER THE LAWS OF
THE STATE OF FLORIDA

125

# PSS INTERNET SERVICES, INC.

500 SHARES COMMON STOCK $1.00 PAR VALUE

**This Certifies that** GEORGE KUHN – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

is hereby issued ONE HUNDRED TWENTY FIVE – – – – – – – – – – – – – – – – – – – – – – fully paid
and non-assessable Shares of the Capital Stock of the above named Corporation
transferable only on the books of the Corporation by the holder hereof in person or
by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers
and its corporate seal to be hereunto affixed this 16th day of January A.D. 19 95

SECRETARY

PRESIDENT

EXHIBIT 2 to EXHIBIT "A"

007

20

# PSS INTERNET SERVICES, INC.

500 SHARES COMMON STOCK $100 PAR VALUE

ORGANIZED UNDER THE LAWS OF
THE STATE OF FLORIDA

**This Certifies that** ————— Harold Millan

is hereby issued ————— TWENTY ————— fully paid

and non-assessable Shares of the Capital Stock of the above named Corporation

transferable only on the books of the Corporation by the holder, hereof in person or

by duly authorized Attorney upon surrender of this Certificate properly endorsed.

this 21th day of January

SECRETARY

B-1



PSS INTERNET SERVICES, INC.

ORGANIZED UNDER THE LAWS OF
THE STATE OF FLORIDA

006

255

**This Certifies that** _____ Jeremy Greenidge

is hereby issued _____ TWO HUNDRED AND FIFTY FIVE _____ fully paid

and non-assessable Shares of the Capital Stock of the above named Corporation

transferable only on the books of the Corporation by the holder hereof in person or

by duly authorized Attorney upon surrender of this Certificate properly endorsed.

7th        July

SECRETARY

A-1

CERTIFICATE 004

Issued to GEORGE KUHN

For 25 Shares

Dated 01/16/1995

From whom transferred:

Dated _____ 19__

No. of Original Certificate _____

No. of Original Shares _____

No. of Shares Transferred 19__

Received Certificate No. _____ Shares

for _____

on _____ 19__

---

CERTIFICATE

Issued to VERITY GREENIDGE

For 25 Shares

Dated 7TH NOV

From whom transferred:

Dated _____

No. of Original Certificate

No. of Original Shares _____

No. of Shares Transferred 19__

Received Certificate No. _____ Shares

for _____

on _____ 19__

---

CERTIFICATE

Issued to HAROLD MILLA

For 20 Shares

Dated 21 Vanuary 1995

From whom transferred:

Dated _____

No. of Original Certificate

No. of Original Shares _____

No. of Shares Transferred 19__

Received Certificate No. _____ Shares

for _____

on _____ 19__

---

CERTIFICATE

Issued to CHARLES HENDERSON

For 100 Shares

Dated 21st Vanuary 1995

From whom transferred:

Dated _____

No. of Original Certificate

No. of Original Shares _____

No. of Shares Transferred 19__

Received Certificate No. _____ Shares

for _____

on _____ 19__

C-1

| APPLICATION FOR REINSTATEMENT | FLORIDA DEPARTMENT OF STATE<br>Sandra B. Mortham<br>Secretary of State<br>DIVISION OF CORPORATIONS | |
|---|---|---|

DOCUMENT # P94000028846
1. Corporation Name

PSS INTERNET SERVICES, INC.

97 SEP 24 AM 9:52

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

| Principal Place of Business | Mailing Address |
|---|---|
| 168 NORTH BEACH STREET | |
| DAYTONA BEACH, FL 32114-3308 | |

**REINSTATEMENT 95-97**

If above addresses are incorrect in any way, line through incorrect information and enter correction below.

DO NOT WRITE IN THIS SPACE

| 2. New Principal Office Address, if Applicable | 3. New Mailing Address, if Applicable | 4. Date Incorporated or Qualified To Do Business in Florida  4-13-94 |
|---|---|---|
| Suite, Apt #, etc. | Suite, Apt. #, etc | 5. FEI Number   59-3292321   Applied For / Not Applicable |
| City & State | City & State | 6. CERTIFICATE OF STATUS DESIRED ☒   $8.75 Additional Fee required for a Certificate of Status |
| Zip | Country | Zip | Country | | |

7. Names and Street Addresses of Each Officer and/or Director (Florida nonprofit corporations must list at least 3 directors)

| Title(s) 1 | Name of Officers and/or Directors 2 | Street Address of Each Officer and/or Director (Do NOT Use Post Office Box Numbers) 3 | City / State / Zip 4 |
|---|---|---|---|
| PID | JEREMY GREEN | 168 NORTH BEACH STREET | DAYTONA BEACH, FL 32114 |
| VID | HARRY MILLON | 168 NORTH BEACH STREET | DAYTONA BEACH, FL 32114 |
| | | 400002304784---4<br>-09/26/97--01071--009<br>***1088.75  ***1088.75 | |

| 8. Name and Address of Current Registered Agent | 9. Name and Address of New Registered Agent |
|---|---|
| | Name  HARRY MILLON |
| | Street Address (P.O. Box Number is Not Acceptable)  168 NORTH BEACH STREET |
| | Suite, Apt. #, Etc. |
| | City  DAYTONA BEACH   State FL   Zip Code 32114 |

10. I, being appointed the registered agent of the above-named corporation, am familiar with and accept the obligations of Section 607.0505, F.S.

Signature of Registered Agent _____ REGISTERED AGENT MUST SIGN          Date 22 SEPT 97

11. Does this corporation pay any intangible tax to the Dept. of Revenue under S. 199.032, Florida Statutes.   Yes ☒   No ☐   (See other side for information on intangible tax.)

12. I do hereby certify that the information supplied with this filing is voluntarily furnished and does not qualify for the exemption stated in Section 119.07(3)(k), Florida Statutes. I release the Division of Corporations from any liability of non-compliance with Section 119.07(3)(k) in the event that the information supplied is deemed exempt from public access. I certify that I am an officer or director or the receiver or trustee empowered to execute this application as provided for in chapter 607 or 617, F.S. I further certify that when filing this reinstatement application the reason for dissolution has been eliminated, the corporate name satisfies the requirements of section 607.0401 or 617.0401, F.S., and that all fees owed by the corporation have been paid. The information indicated on this application is true and accurate, and my signature shall have the same legal effect as if made under oath.

904 253-7100

SIGNATURE: _____ HARRY MILLON V/D   22 SEPT 97
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR   Date   Daytime Phone #

CR2E040 (12/95)

EXHIBIT 3 to EXHIBIT "A"

## Jeremy Greenidge

| | |
|---|---|
| **From:** | hjmillan@csi.com on behalf of Harold J. Millan [hjmillan@csi.com] |
| **Sent:** | Saturday, February 05, 2000 18:43 |
| **To:** | iwont@fuku.net |
| **Subject:** | Fw: Progress? |

```
----- Original Message -----
From: CaptGTK <captgtk@compuserve.com>
To: <ceh913@bellsouth.net>; <hjmillan@compuserve.com>
Sent: Saturday, February 05, 2000 10:29 AM
Subject: Progress?
```

>
> Chuck and Harry,
>
> Jeremy's lawyer from New York called my attorney a few times this past
> week.  We are mystified why they are doing this, since this New York
> attorney was only supposed to handle the legal/money aspects of the sale -
> through Great Domains.  Mr. O'Conner (Jeremy's attorney) seems anxious to
> get the name sold quickly.  We are trying to figure out why he's so
> interested.  I have a feeling we are being sandbagged.
>
> Through Mr. O'Conner, Jeremy made a settlement offer with me.  AS you both
> know I own (and can prove) 25% ownership in PSS Internet.  Jeremy offered
> me  15% of the first $5 million, 10% of the next $5 million, and 5% of
> anything over $10 million.  I laughed when I saw it.  I think 25% means
25%.
>
> The lawsuit has been filed in Federal court.  One of the many aspects of
> the suit is a request for an emergency injunction against the sale of
> america.com.  There will likely be a hearing for this request in the next
> two or three weeks.
>
> The attorneys feel it would be beneficial to revive PSS Internet Service,
> Inc. with the State of Florida so that it can legally do business, i.e.
> receive back the domain names and then contract in its own name to auction
> them.  AS it turns out, Jeremy never added me as a director (which was
> promised when I invested.)  The only people that can sign the corporate
> paperwork are Harry and Jeremy.  I doubt Jeremy is interested, so Harry
> it's up to you!  PLEASE call Mr Rayson's office and make arrangements to
> revive PSS asap!  I have already sent a check to Mr. Rayson for $1,058.75
> to pay the back fees to get it reinstated.  All you have to do is sign it!
>
> Harry, you indicated that Jeremy is now claiming majority ownership.  If I
> own 25% and Chuck has 4% of the stock, it sounds like he is definitely
> trying to give you the short end of the stick.  When I invested in 1994,
my
> understanding was Harry 35% and Jeremy 40%.  EVentually, Jeremy sold 4% of
> his stock to Chuck, but I was not privvy to the details.  Harry, this
means
> Jeremy is trying to stick you with 20% ownership (if he claims 51%, I have
> 25% and Chuck has 4%.)  Guys, we really need to stick together to get
> control of this whole thing away from Jeremy.
>
> This brings me to the last point.  Right now I am the only Plaintiff on
the
> lawsuit.  If you guys are interested in being added, please do so.  It
> would be in your best interest to have a court of law uphold your
> percentages (and thereby your proceeds.)  Harry, I suggest you claim 35%
in
> the suit when you join and Chuck claim your 4%

1

EXIHIBT 4 to EXHIBIT "A"

DEFENDANT'S
EXHIBIT
# 3 Part (
0 - 2/21/0)

```
>
> I have one request of you guys, though.  Even though I am seeking
> compensation from Jeremy for legal expenses, there is always a possibility
> that I may not get them from Jeremy after the sale.  If we prevail and
> eventually receive fair compensation from the sale of america.com, I would
> request that we share the legal expenses I'm incurring to bring this suit
> (in proportion to our ownership percentage.)  Again, this is only if the
> judge will not require Jeremy to bear the expenses.  I think it's only
fair
> and it will only happen if we get the proceeds from the sale.  So far I've
> put in about $17,000 and I owe Mr. Rayson another $15,000 in the next week
> or two.  If it gets dragged out, I will end up mortgaging everything and
> will be in debt to my ears.  Please promise to help me out when the dust
> settles (in our favor.)
>
> If you are interested in joining as PLaintiffs, get in touch with Mr.
> Rayson's office as soon as possible. Mr. Rayson's associate, Tom Moss, is
> handling most of the case.  When you call, speak to him and explain who
you
> are.
>
> Law Offices of Rayson & Moss
> 2400 E. Oakland Park Blvd.
> Ft. Lauderdale, FL 33306
>
> 954-566-8855
> FAX 954-566-8902
> Rayson2000@aol.com
>
>
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 00-6172-CIV-ZLOCH

PSS INTERNET SERVICES, INC.,
a Florida corporation and
GEORGE KUHN, individually,

        Plaintiffs,

v.

JEREMY GREENIDGE, individually,
AMERICA DOT COM, INC., a
Tortola, British Virgin Islands
Corporation and GREATDOMAINS.COM,
INC., a California corporation,

        Defendants.
_____/

## DECLARATION[1] OF JEREMY GREENIDGE
## IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JEREMY GREENIDGE, declares as follows:

1. I am a director and shareholder of PSS Internet, Inc., ("PSS"). I submit

this affidavit in support of the Motion for Summary Judgment filed herewith by America

Dot Com, Inc. ("America Dot Com") and me. This affidavit is based upon my personal

knowledge. If called upon, I will testify to these matters.

2. In early 1993, Harold Millan ("Millan") and I decided to enter into business

together and form an "internet corporation" to provide dial-up internet access, corporate

internet access, websites and electronic mail addresses. Based on our respective

---

1 Pursuant to 28 U.S.C. § 1746, Jeremy Greenidge submits this declaration which has the "like force and effect" of
an affidavit or sworn declaration.

**EXHIBIT "B"**

involvement with other matters at this time, we decided to wait a year before opening the company for business.

3.    Millan and I initially agreed on the name "PSS Telecom" but later changed to "PSS Internet Services, Inc." ("PSS") for our new corporation and "pss.net" as the domain name for PSS's home web page.

4.    In March of 1994, I created the internet domain name "America.com."

5.    I subsequently told Millan of my idea of this domain name and offered PSS use of the name as its home webpage.

6.    At the time I created "America.com", Network Solutions, Inc., ("NetSol") was the sole registrar for internet domain names. In the early 1990's, NetSol prohibited registration of domain names ending in ".com" in the name of an individual. NetSol only allowed registration of ".coms" in the name of a corporate or other business entity. Millan and I agreed to register the domain name "America.com" in the name of PSS, which I did on March 29, 1994.

7.    Based on my agreement with Millan concerning (1) PSS's use of "America.com" and (2) PSS's registration of "America.com" with NetSol, I entered into a License Agreement with PSS. The License Agreement provided that PSS had a license to use "America.com" as its home website and held legal title for me, the beneficial owner.

8.    On April 13, 1994, Millan and I incorporated PSS in the state of Florida. We were the sole shareholders of PSS at this time. I was the president, chief executive

2

officer and a director. Millan was secretary/treasurer and a director, and Fernando
Pinero was a director. (See Articles of Incorporation attached hereto as Exhibit "1").

9.      In June and July of 1994, Millan and I entered into a series of agreements
concerning PSS's use of my other domain names: "universe.net" "worldwide.net"
"cosmos.net" and "earth.net." As with the "America.com" License Agreement, Millan
and I agreed that PSS would register these names with NetSol and have the benefit of
the use of such names, but, at all time, sole and exclusive ownership of these domain
names would remain with me.

10.    In 1995, Charles Henderson ("Henderson") and George Kuhn ("Kuhn")
approached me regarding investment in PSS. Prior to selling any shares of PSS to
Henderson and Kuhn, Millan and I informed them that, although PSS used the domain
name "America.com," along with "universe.net" "worldwide.net" "cosmos.net" and
"earth.net", it did so pursuant to a number of license agreements and that I was the sole
and exclusive owner of each of these domain names. After receiving this information,
Henderson purchased 100 shares and Kuhn purchased 125. I owned 255 shares and
Millan owned 20. I remained the majority shareholder throughout PSS's existence and
Henderson, Kuhn, Millan and I remained the sole shareholders. Neither Henderson nor
Kuhn took part in the day to day operations of PSS. In fact, Kuhn told me that he
simply wanted to invest during a dinner with Aaron Gee and myself in Daytona Beach
soon after his purchase of PSS stock.

11.    In August of 1995, PSS was administratively dissolved but continued to do
business. Based on the continuation of business, Millan and I agreed to apply for

3

reinstatement, which was effective on September 24, 1997. Based on Fernando Pinero's resignation soon after incorporation, Millan and I were the sole directors of PSS, as reflected in our application for reinstatement. (See Application of Reinstatement, a true copy of which is attached hereto as Exhibit "2").

12.   On October 16, 1998, PSS was again administratively dissolved.  Millan and I agreed not to file for reinstatement because PSS had ceased doing business in approximately May of 1998.

13.   Pursuant to the License Agreements, PSS's right to use my domain names terminated upon PSS's cessation of business.

14.   At no time was George Kuhn a director of PSS.  I did not inform George Kuhn that he was or would ever be a director of PSS. At no time was George Kuhn an officer of PSS.  I did not inform George Kuhn that he was or would ever be an officer of PSS. Millan and I, as the sole directors of PSS, never voted or agreed to appoint or elect Kuhn as a director of PSS.  As majority shareholder, at no time did I ever agree to or vote my shares in favor of Kuhn as a director.

15.   At no time was George Kuhn ever promised an interest in the domain names "America.com" "universe.net" "worldwide.net" "cosmos.net" or "earth.net."

16.   At no time did PSS ever pay registration fees to NetSol or to any other entity for the registration of "America.com" "universe.net" "worldwide.net" "cosmos.net" or "earth.net."

17.   Beginning with the initial registrations with NetSol in March of 1994 through today, I have personally paid for all registration fees for "America.com"

4

18.     In November of 1999, I transferred the registration of "America.com," from PSS to America Dot Com, Inc., a company I formed in the British Virgin Islands. America Dot Com, Inc., then contracted with Great Domains .com for the sale of "America.Com." See Exhibit "4" attached hereto.

19.     On January 14, 2000, I received a "Notice of Meeting." (See Notice of Meeting, a copy of which is attached hereto as Exhibit "**5**.") Kuhn apparently attempted to call this meeting of the Board of Directors of PSS. However, as I explained to Kuhn that day, he was not and had never been a director of PSS and, therefore, did not have the authority to call a directors' meeting.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this _**30**_ day of **JANUARY**, 2001.

JEREMY GREENIDGE

5


ARTICLES OF INCORPORATION

## ARTICLE I

### NAME

THE NAME OF THIS CORPORATION IS: PSS INTERNET SERVICES, INC., and the mailing address is 5195 N.W. 74th Avenue, Miami, FL 33166.

## ARTICLE II

### DURATION

This corporation shall have a perpetual existence. unless dissolved according to law.

## ARTICLE III

### PURPOSE

This corporation is organized for the purpose of transacting any or all business for which corporation may be incorporated under the Florida General Corporation Act.

## ARTICLE IV

EXIHIBIT 1 to EXHIBIT "B"

## ARTICLE V

## INITIAL REGISTERED OFFICE & AGENT

The street address of the initial registered office and principal place for conducting business is 5195 N.W. 74th Avenue, Miami, FL 33166, and the initial registered agent is Fernando S. Pinero, at 5195 N.W. 74th Avenue, Miami, FL 33166

### ARTICLE VI

### INITIAL BOARD OF DIRECTORS

This corporation shall have (3) (three) directors initially. The number of director(s) may be either increased or decreased from time to time by the By-Laws, but shall never be less than one. The name and address of the initial directors of this corporation is:

Jeremy Greenidge
5195 N.W. 74th Avenue
Miami, FL 33166

Harold J. Millan
5195 N.W. 74th Avenue
Miami, FL 33166

Fernando S. Pinero
5195 N.W. 74th Avenue
Miami, FL 33166

ARTICLE VII

To the full extent permitted by the law, the corporation shall indemnify each person made or threatened to be made a party to any threatened, pending or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative (including one in the right of the corporation to procure a judgment in its favor, by reason of the fact that her or his testator or intestate, is or was a director,


officer, employee or agent of the corporation or served any
other corporation, partnership, joint venture, trust, or
other enterprise in any capacity at the request of the
corporation.

## ARTICLE VIII

### INCORPORATED

The name and the address of the person signing these articles
is:

Fernando S. Pinero
5195 N. W. 74th Avenue
Miami, FL 33166

## ARTICLE IX

### OFFICERS

The officers of this corporation shall be as follows:

Jeremy Greenidge          President

Harold J. Millan          Treasurer

CERTIFICATE DESIGNATING PLACE OF BUSINESS OR DOMICILE FOR THE
SERVICE OF PROCESS WITHIN  THIS STATE, NAMING AGENT UPON WHOM
PROCESS MAY BE SERVED.



In pursuance of Chapter 48.091 Florida Statutes, the
following is submitted, in compliance with said Act:

First: That PSS INTERNET SERVICES, INC. desiring to
organize under the laws of the State of Florida with its
principal office, at 5195 N.W. 74th Avenue, City of Miami,
County of Dade, State of Florida, has named Fernando S.
Pinero located at 5195 N.W. 74 Avenue, City of Miami, County
of Dade, State of Florida, as its agent to accept service of
process of within this state.

Having been named to accept service of process of the
above stated corporation, at place designated in this
certificate, I hereby accept to act in this capacity, and
agree to comply with the provision of said Act relative to
keeping open said office.

*Fernando*



STATE OF FLORIDA)
COUNTY OF DADE)

BEFORE ME, a notary public authorized to take
acknowledgments in the state and county set forth above
personally appeared Fernando S. Pinero known to me and known
by me to be the person who executed the foregoing Articles of
incorporation, and he acknowledged before me that he executed
those Articles of Incorporation.

IN WITNESS WHEREOF, I have hereunto set my hand and
affixed my official seal, in the state and county aforesaid
this 28th day of March 1994.



ALEXIS NEGRO
Notary  STATE OF FLORIDA
Public  My Comm Exp 8/5/95

| APPLICATION FOR REINSTATEMENT | FLORIDA DEPARTMENT OF STATE<br>Sandra B. Mortham<br>Secretary of State<br>DIVISION OF CORPORATIONS |
|---|---|

DOCUMENT # P94000028416

97 SEP 24 AM 9:52

1. Corporation Name

PSS INTERNET SERVICES, INC.

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

**Principal Place of Business** — **Mailing Address**

168 NORTH BEACH STREET
DAYTONA BEACH, FL 32114 - 3308

REINSTATEMENT 95-97

If above addresses are incorrect in any way, line through incorrect information and enter correction below.

DO NOT WRITE IN THIS SPACE

| 2. New Principal Office Address, If Applicable | 3. New Mailing Address, If Applicable | 4. Date Incorporated or Qualified To Do Business in Florida 4-13-94 |
|---|---|---|
| Suite, Apt #, etc. | Suite, Apt #, etc | 5. FEI Number  Applied For |
| City & State | City & State | 59-3292321 Not Applicable |
| Zip | Country | Zip | Country | 6. CERTIFICATE OF STATUS DESIRED ☒  $8.75 Additional Fee required for a Certificate of Status |

7. Names and Street Addresses of Each Officer and/or Director (Florida nonprofit corporations must list at least 3 directors)

| Title(s) 1 | Name of Officers and/or Directors 2 | Street Address of Each Officer and/or Director (Do NOT Use Post Office Box Numbers) 3 | City / State / Zip 4 |
|---|---|---|---|
| PID | JEREMY GREEN | 168 NORTH BEACH STREET | DAYTONA BEACH, FL 32114 |
| VID | HARRY MILLON | 168 NORTH BEACH STREET | DAYTONA BEACH, FL 32114 |

4000023 04784 --- 4
-09/26/97--01071--009
***1088.75 ***1088.75

| 8. Name and Address of Current Registered Agent | 9. Name and Address of New Registered Agent |
|---|---|
| | Name HARRY MILLON |
| | Street Address (P.O. Box Number is Not Acceptable) 168 NORTH BEACH STREET |
| | Suite, Apt. #, Etc. |
| | City DAYTONA BEACH  State FL  Zip Code 32114 |

CRE2040 (12/95)

10. I, being appointed the registered agent of the above-named corporation, am familiar with and accept the obligations of Section 607.0505, F.S.

Signature of Registered Agent _____ REGISTERED AGENT MUST SIGN

Date 22 SEPT 97

11. Does this corporation pay any intangible tax to the Dept. of Revenue under S. 199.032, Florida Statutes. Yes ☒ No ☐    (See other side for information on intangible tax.)

12. I do hereby certify that the information supplied with this filing is voluntarily furnished and does not qualify for the exemption stated in Section 119.07(3)(k), Florida Statutes. I release the Division of Corporations from any liability of non-compliance with Section 119.07(3)(k) in the event that the information supplied is deemed exempt from public access. I certify that I am an officer or director or the receiver or trustee empowered to execute this application as provided for in chapter 607 or 617, F.S. I further certify that when filing this reinstatement application the reason for dissolution has been eliminated, the corporate name satisfies the requirements of section 607.0401 or 617.0401, F.S., and that all fees owed by the corporation have been paid. The information indicated on this application is true and accurate, and my signature shall have the same legal effect as if made under oath.

904 253 7100

SIGNATURE: _____ HARRY MILLON V/D    Date 22 SEPT 97

SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR    Daytime Phone #

EXHIBIT 2 to EXHIBIT "B"

JOHN C. RAYSON*
THOMAS F. MOSS
*ALSO ADMITTED IN ILLINOIS

John C. Rayson
2400 EAST OAKLAND PARK BOULEVARD
FORT LAUDERDALE, FLORIDA 33306
TELEPHONE (954) 566-8855
FAX (954) 566-8902

OF COUNSEL
LELAND H. RAYSON

**FACSIMILE TRANSMITTAL**

DATE: 1/12/00

TIME: 3:05 p.m.

Jeremy Greenridge

ATION: _____

FAX NUMBER: 846-436-9909

ARE TRANSMITTING 2 pages, including this cover sheet. If
...e transmission is incomplete, phone 954-966-8855.

BY: _____

COMMENTS: _____
Notice of meeting.

_____

_____

_____

___ As you requested          _____ Please call about this

_____ Please comment          _____ For your files

INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED
AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE
INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS
NOT THE INTENDED RECIPIENT, THE READER IS HEREBY NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN
ERROR, PLEASE NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS VIA U.S. MAIL.

EXHIBIT 3 to EXHIBIT "B"


DEFENDANT'S
EXHIBIT
#2 FacT)
02-0/28/0,

NOTICE OF MEETING
OF
PSS INTERNET SERVICES, INC.

YOU ARE HEREBY NOTIFIED that there will be a general meeting of directo , shareholders
and officers of PSS INTERNET SERVICES, INC., on Friday, January 14, 2000, at 8 a.m. EST,
at the LAW OFFICES OF JOHN C. RAYSON, 2400 E. Oakland Park Blvd, Second Floor, Fort
Lauderdale, FL 33306, 954-566-8855.

The purpose of the meeting will be to elect officers and directors, to reinstate the corporation as a
corporation under Florida Law and to vote to take such action as necessary to reclaim the domain
names of america.com, earth.net, worldwide.net, and any and all other business that may come
before the directors, shareholders and officers.

By:
George K
Director  Shareholder

ATTENTION:      Jeremy Greenidge (aka Jeremy Green)
                Charles Henderson
                Harold Millan

PSS Internet Services, Inc.

Stockholders' Meeting of 14 January 2000
to be held at 8:00 AM E.S.T. at
The Law Offices of John C. Rayson
2400 E. Oakland Park Blvd.
Fort Lauderdale, FL 33306

Any stockholder unable to attend in person can phone Mr Rayson's office (954-566-
8855) at 8:00 AM E.S.T. on 14 January 2000 and be put on conference call for the
meeting. Alternately, any stockholder can attend by proxy. Proxies can be faxed to Mr.
Rayson's office at 954-566-8902.

AGENDA:

1. Call to order

2. Vote of shareholders on reinstatement of PSS Internet Services, Inc. (a Florida
corporation.)

3. Vote of shareholders on recall of any officers and/or directors of PSS Internet
Services, Inc.

4. Shareholder nominations and election of new officers and/or directors of PSS
Internet Services, Inc.

5. Call to order of Board of Directors meeting of PSS Internet Services, Inc.

6. Floor open to shareholders.

7. New business

Respectfully,

George F. Kuhn, Director
PSS Internet Services, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 00-6172-CIV-ZLOCH

PSS INTERNET SERVICES, INC.,
a Florida corporation and
GEORGE KUHN. individually,

          Plaintiffs,

v.

JEREMY GREENIDGE, individually,
AMERICA DOT COM, INC.. a
Tortola. British Virgin Islands
Corporation and GREATDOMAINS.COM,
INC., a California corporation,

          Defendants.

_____/

## AFFIDAVIT OF AARON GEE IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

State of Florida        )
                        ) ss
County of Volusia       )

     AARON GEE, being duly sworn. deposes and states:

     1.     I am the former office manager for PSS Internet, Inc. ("PSS"). I held that

position for over four years. I submit this affidavit in support of the Motion for Summary

Judgment filed by America Dot Com and Jeremy Greenidge. This affidavit is based

upon my personal knowledge. If called upon, I will testify to these matters.

     2.     In 1994, I was hired by Jeremy Greenidge ("Jeremy") to work for PSS as a

technical representative. I was promoted to head officer manager that same year. I

worked for PSS from 1994 through 1998.

 EXHIBIT "C"

3.   In my employment with PSS, I was responsible for, among other things, company correspondence and accounting.

4.   In 1996, PSS received correspondence from NetSol advising PSS that the domain name "America.com" had been removed from NetSol's registration based on PSS's failure to pay registration dues.

5.   At this time, I asked Jeremy whether I should make payment to NetSol for "America.com's" registration on behalf of PSS.  Jeremy told me that he would pay the registration fees from his personal account because he personally owned "America.com." He explained that PSS merely held a license to use the name.

6.   At no time did PSS ever pay registration fees to NetSol or to any other entity for the registration of "America.com," or for any other domain name.

7.   In 1995, I had dinner in Daytona Beach (the "Italian Village" restaurant) with Greenidge and George Kuhn.  Mr. Kuhn had recently bought shares in PSS.  Mr. Kuhn stated that he did not want "anything to do" with the day-to-day operations of PSS. He told Greendidge and myself that he simply wished to invest.

FURTHER AFFIANT SAYETH NOT.

Aaron Gee

NOTARY PUBLIC - STATE OF FLORIDA
KATHLEEN D. FRASSRAND
COMMISSION # CC664120
EXPIRES 11/4/2001
BONDED THRU ASA 1-888-NOTARY1

Signature of Notary Public
State of FLORIDA
Print, Type or Stamp Commissioned Name
of Notary Public

Personally Known _____ or Produced Identification ✓
Type of Identification Produced: Driver's License  Other _____

2

62370  01 08 01 4 27 PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 00-6172-CIV-ZLOCH

PSS INTERNET SERVICES, INC.,
a Florida corporation and
GEORGE KUHN, individually,

        Plaintiffs,

v.

JEREMY GREENIDGE, individually,
AMERICA DOT COM, INC., a
Tortola, British Virgin Islands
Corporation and GREATDOMAINS.COM,
INC., a California corporation,

        Defendants.

_____/

## **AFFIDAVIT OF MICHAEL MASTERSON IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

State of Texas      )
                ) ss
County of _DALLAS_  )

    MICHAEL MASTERSON, being duly sworn, deposes and states:

    1.    I am the former technical advisor for PSS Internet, Inc., ("PSS"). I submit this affidavit in support of the Motion for Summary Judgment filed by America Dot Com and Jeremy Greenidge. This affidavit is based upon my personal knowledge. If called upon, I will testify to these matters.

    2.    From 1993 through 1998, I provided technical support to PSS in connection with its internet business.

    3.    Jeremy Greenidge created the domain name "America.com."

EXHIBIT "_D_"

4.      In the early 1990's, including 1993, the sole registrar of internet domain

names, Internic (now known as Network Solutions, Inc.) prohibited the registration of

commercial web addresses (also known as ".coms") in the name of an individual.

Rather, NetSol required that all ".coms" be registered under the name of a corporate or

business entity.

FURTHER AFFIANT SAYETH NOT.

Michael Masterson

Signature of Notary Public
State of TEXAS
Print, Type or Stamp Commissioned Name
of Notary Public

KEITH A RUSSELL
Notary Public, State of Texas
My Commission Exp 07-02-2003

Personally Known ____ or Produced Identification ____
Type of Identification Produced: Driver's License Other _____

2