UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 00-6172-CIV-ZLOCH

PSS INTERNET SERVICES, INC.
a Florida corporation and
GEORGE KUHN, individually,

    Plaintiffs,

v.

JEREMY GREENIDGE, individually
and AMERICA DOT COM, INC.,
a Tortola, British Virgin Islands
corporation,

    Defendants.
_____/



## PLAINTIFFS' STATEMENT OF MATERIAL FACTS
## AND MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs/Counter-Defendants, PSS Internet Services, Inc. ("PSS") and George Kuhn

("Kuhn") by and through undersigned counsel and pursuant to Rule 7.5, S.D. Fla. L.R., hereby file

Plaintiff's Statement Of Material Facts And Memorandum Of Law In Opposition To Defendants'

Motion For Summary Judgment and in support thereof state as follows:

### I. STATEMENT OF MATERIAL FACTS

In or around October of 1994, Kuhn invested $25,000 in PSS in exchange for 125 shares of

stock and a seat on the board of directors. (Kuhn Affid. at ¶ 3, attached hereto as Exhibit "A").

Greenidge and Millan agreed to those terms and, pursuant to that agreement, Kuhn invested the

$25,000 in PSS. (Id.)

1

At the time of Kuhn's investment, Millan told Kuhn that Greenidge and Millan each owned approximately one third of PSS' total shares. (Kuhn Affid. at ¶ 5). Millan's representation was important to Kuhn because he did not want any individual shareholder to have control of PSS and his new investment. (Id.) According to Millan's representation, two shareholders would always be required to affect any change in PSS. (Id.) Kuhn would not have made his investment if he knew Greenidge was a majority shareholder. (Id.) Likewise, Kuhn would not have made his investment if he were not promised a seat on the board of directors. (Id. at ¶ 3).

After Kuhn's investment, PSS held meetings attended by Greenidge, Millan and Kuhn to discuss the operation of the business. (Kuhn Affid. at ¶ 7). Greenidge, Millan and Kuhn referred to the meetings as directors meetings. (Id.) At no time during the operation of PSS did anyone, including Greenidge or Millan, tell Kuhn that he was not considered a director. The first time anyone told Kuhn that he was not considered a director was on January 14, 2000 when Greenidge objected to Kuhn's calling of a directors meeting on the basis that Kuhn was not a director. (See Kuhn Affid. at ¶ 8).

At the time of Greenidge's solicitation of Kuhn's investment, Greenidge told Kuhn that by buying into PSS, he would be buying into the Internet domain name "America.com" and that it would become "pretty pricey real estate." (Kuhn Depo. at p. 24, 1.12; Kuhn Affid. at ¶ 4). Greenidge also assured Kuhn that his investment would be protected by the value of "America.com". (Kuhn Affid. at ¶ 4). Kuhn understood Greenidge's statements to mean that "America.com" was an asset of PSS. (See Kuhn Affid. at 4). At that time, Kuhn knew that PSS operated as "America.com" and that customers referred to PSS as "America.com" (Id. at ¶ 6).

At no time prior to or during Kuhn's investment in PSS, did anyone refer to the "license

2

agreement" referred to by Greenidge in his pleadings and Motion For Summary Judgment. (Id.) Kuhn never heard of a license agreement until January 14, 2000 when Greenidge mentioned it for the first time. (See Kuhn Depo. at p. 38, 1.14). Kuhn would not have invested in PSS if he had known of a license agreement because with such an agreement "America.com" could not protect his investment. (See Kuhn Affid. at ¶ 4). Based on Greenidge and Millan's failure to disclose any purported agreements regarding the licensing of "America.com" and Greenidge's representation that Kuhn was buying into "America.com", there is a factual dispute as to the existence of a license agreement.

Greenidge has not paid all registration fees for "America.com". Rather, Kuhn, on behalf of PSS paid the latest registration fee on or about February 13, 2000. Any registration fees paid by Greenidge were likewise paid on behalf of PSS, the registrant of "America.com".

At the time of Kuhn's investment, Kuhn was not informed of any license agreements regarding the domain names "America.com", "universe.net", "worldwide.net", "earth.net" and "cosmos.net". (See Kuhn Affid. at ¶ 6). Greenidge did tell Kuhn shortly after his investment that "universe.net", "worldwide.net" and "earth.net" were all registered to PSS.

There is a factual dispute as to whether or not Greenidge told Kuhn that "America.com" belonged to PSS. Defendants concede in their statement of facts in support of their Motion For Summary Judgment that Kuhn was told that "America.com" was PSS's domain name. (Def. Motion For Summary Judgment, p.8). Kuhn understood that statement to mean that PSS owned "America.com". Thus, a factual dispute as to that issue is evident.

Contrary to Defendants' assertions in their statement of facts, Kuhn never admitted during his deposition that neither Greenidge nor Millan ever stated that he was a director of PSS. (Kuhn

3

Depo. at pp. 28, 34). A close examination of Kuhn's deposition reveals that he was not asked if Greenidge or Millan <u>ever</u> stated that he was a director of PSS. Instead, Defense counsel asked Kuhn " [s]o did anybody say anything to you at this three-way meeting with Mr. Millan, Mr. Greenidge and yourself to give you the understanding that you were going to be a director as opposed to something on a piece of paper?" (<u>Id</u>. at p. 28). Kuhn answered that he did not recall. (<u>Id</u>.) Next, Kuhn was asked: "At any time since investing in 1994, have you asked either Mr. Millan or Mr. Greenidge to confirm that you, that you were a director in the company?", to which Kuhn answered "No." (Kuhn Depo. at p. 34). Thus, Kuhn's deposition testimony hardly establishes that he admitted that neither Greenidge nor Millan ever stated that he was a director. In fact, Kuhn testified in his deposition that he was promised a seat on the board of directors and that he remains a director. (<u>Id</u>. at p. 28, l. 13; p. 89, l. 2 ).

After PSS ceased doing business in 1998, PSS continued to operate as "America.com", as reflected by the company's Internet website. Attached to Plaintiffs' Amended Complaint as exhibit "C" is a March 1, 2000 printout which establishes that PSS continued to offer services to the public as "America.com" even after Greenidge unilaterally transferred the registration of "America.com" to his own foreign corporation.

After Kuhn learned of Greenidge's unauthorized transfer of the domain name, he wrote to NetSol to request that the name be returned to PSS. NetSol agreed to do so and to this day "America.com" remains registered to PSS. In his correspondence to NetSol, Kuhn referred to himself as a director because he has always maintained that he is a director pursuant to his initial investment. (<u>See</u> Kuhn Depo. at p.89).

On January 12, 2000, Kuhn, as a director of PSS, scheduled a meeting of directors and

4

shareholders in order to discuss several issues, including the disposition of PSS' main asset,
"America.com". (See Kuhn Affid. at ¶ 13). Kuhn, Greenidge and Millan appeared at the January
14, 2000 meeting by telephone and discussed "America.com". During the meeting, Greenidge
enlisted the help of both Kuhn and Millan to help find out the identity of a person in Michigan who
had apparently attempted to register "America.com". (Id.) Neither Greenidge nor Millan stated that
Kuhn was not entitled to his share of "America.com" and, in fact, Greenidge promised to e-mail
Kuhn a proposal for dividing the profits if "America.com" were sold. (Id.)

## II. MEMORANDUM OF LAW

### Legal Standard on Motion for Summary Judgment

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a judgment as a matter of law."
Fed.R.Civ.P. 56(c). Summary judgment is appropriate only in circumstances where "the evidence
is such that a reasonable jury could [not] return a verdict for the nonmoving party." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of proving that no genuine issue of material fact exists.
Celotex v. Catrett, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied
the burden, the Court considers all inferences drawn from the underlying facts in the light most
favorable to the party opposing the motion, and resolves all reasonable doubts against the moving
party. Anderson, 477 U.S. at 255.

On a summary judgment motion, the Court may not weigh the credibility of the parties. See

5

Rollins v. TechSouth Inc., 833 F.2d 1525, 1531 (11th Cir. 1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. Id.

## Summary of Argument

The pleadings, depositions, and affidavits filed with this Court present several genuine issues of material fact which cannot be resolved on a summary judgment motion. Defendants' motion is based largely on an alleged oral license agreement that Kuhn disputes. Instead, Kuhn maintains that he and Greenidge agreed that his investment in PSS was also an investment in "America.com". Thus, the parties present two competing oral agreements. Each party's credibility is at issue, which cannot be resolved on a summary judgment motion.

Likewise, a genuine issue of fact exists as to what constitutes ownership of an Internet domain name. It is undisputed that "America.com" was registered to PSS when Kuhn invested $25,000. It is undisputed that "America.com" is registered to PSS now. It is undisputed that Greenidge told Kuhn that "America.com" is PSS's domain name. In dispute is whether Greenidge's representation meant that "America.com" belonged to PSS - certainly a reasonable interpretation and an issue for the trier of fact.

Finally, Defendants move for summary judgment as to their Counterclaims, which request this Court to declare America Dot com, Inc. the sole and exclusive owner of "America.com". Defendants present no evidence, however, to support their claim that America Dot Com, Inc. owns anything; instead, Defendants consistently maintain that Greenidge owns "America.com". Defendants' own pleadings and arguments create factual disputes which require the denial of their instant Motion for Summary Judgment.

6

## Argument

### 1. Competing Versions of Fact Exist as to PSS' Claims Against Greenidge and America Dot Com, Inc. which Preclude Summary Judgment

Defendants Greenidge and America Dot Com, Inc. rely heavily on an alleged "license agreement", purportedly entered into by Greenidge and Millan some time before the arrival of Kuhn as a shareholder and director of PSS. As Defendants allege the agreement was an oral one, they do not provide said agreement in support of their motion or as an attachment to their counterclaims. Defendants allege that based on this oral agreement, PSS never "owned" any domain names, including "America.com", but merely used them.

While Defendants' contention that Kuhn was not privy to any discussions and agreements made before his arrival at PSS is true, Greenidge's own conduct during and after Kuhn's investment in PSS contradicts his allegation that an oral license agreement ever existed. Kuhn testified at deposition and again in an affidavit that Greenidge promised him, as an inducement to invest in PSS, that he was buying into "America.com" as well as PSS. Greenidge also promised Kuhn that his investment would be protected by the value of "America.com". Those promises, if true, undermine Greenidge's more-recent assertion that an oral license agreement existed at the time of Kuhn's investment in 1994.

Furthermore, Defendants concede in their motion that Kuhn was told that "America.com was PSS's 'domain name . . .'" (Def. Motion for Summary Judgment at p. 8). The most reasonable interpretation of that representation is that the domain name belonged to PSS. Other interpretations are possible, but considering the other representations made to Kuhn at the time of his investment, the most reasonable interpretation is that "America.com" actually did belong to PSS and that that

7

asset is what lured Kuhn to invest $25,000. Regardless of the correct interpretation of Greenidge's assertion, it does pose a factual dispute which the trier of fact should determine after weighing the credibility of the parties.

Defendants argue that, according to his deposition testimony, Kuhn did not refute nor contradict that Greenidge owns the domain names and that a license agreement determined PSS' rights to the domain names. However, Defendants' argument is irrelevant because Kuhn was never asked to refute or contradict anything in his deposition. Instead, Kuhn has consistently maintained that he invested in PSS with Greenidge's promise that he was buying into "America.com".

Defendants' argument that Greenidge owns "America.com" and that PSS only had a license to use the domain names is contradicted by several documents produced during this litigation. A copyright notice displayed on "America.com's" Internet website (a copy of which is attached to the Amended Complaint as exhibit "C") on March 1, 2000 establishes that PSS, not Greenidge individually, copyrighted the domain name.

Finally, America Dot Com, Inc.'s and Greenidge's own Counterclaims confuse the issue of who owns "America.com". According to Count I of both Defendants' Counterclaims, "America.com" is the "sole and exclusive property of Greenidge." However, according to the same Counterclaims' request for relief, paragraph "a", Defendants ask the Court to declare that "America.com" belongs "solely and exclusively to America Dot Com [Inc.]" Apparently, Defendants reason that since Greenidge registered the name to America Dot Com, Inc. in 1999, America Dot Com, Inc. now owns "America.com". If true, then by virtue of Greenidge's registration of "America.com" to PSS in 1994, PSS owned "America.com" at the time of Kuhn's investment in 1994.

8

These confusing and contradictory fact patterns beg the question of what constitutes ownership of an intangible Internet domain name. If registration with NetSol (or a copyright) constitutes ownership, then PSS was and still is the owner of "America.com" since PSS was and is now the registrant. Defendants make that argument in the Counterclaims on behalf of America Dot Com, Inc., but apparently reject PSS' identical argument. Again, a genuine issue of material fact is apparent as to the ownership of the domain names.

### 2. Genuine Issue of Fact Exists as to Kuhn's Right to Bring Suit in His Own Name

Kuhn consistently maintains that when he invested in PSS he was simultaneously buying into the domain name "America.com" pursuant to the oral agreement between himself and Greenidge. (See Kuhn Depo. at p. 24; Kuhn Affid. at ¶ 4). Thus, Kuhn alleges an oral agreement which made him a partial owner of "America.com". Greenidge, on the other hand, alleges an oral agreement which made him the owner of "America.com" and PSS a licensee.

Kuhn has every right to maintain an individual cause of action against Greenidge, who purports to own the domain names outright, to establish his share of "America.com". Assuming the trier of fact accepts Kuhn's version of events and rejects Greenidge's, Kuhn may well be entitled to his share of "America.com". The credibility of the parties must be weighed in order to determine if the oral agreements at issue actually exist and, if so, if they are enforceable. The trier of fact alone can determine the credibility of the parties. Therefore summary judgment as to Kuhn's claims against Greenidge is not warranted.

### 3. Defendants Present No Evidence to Support America Dot Com, Inc.'s Claim to the Domain Names and are Not Entitled to Summary Judgement on their Counterclaims

Both Greenidge and America Dot Com, Inc. move for summary judgment as to their

9

respective Counterclaims. Both defendants allege that Greenidge is the sole and exclusive owner of "America.com", but then request the Court to declare that "'America.com' belongs solely and exclusively to America Dot Com [Inc.]" (Greenidge Counterclaim at p. 12; America Dot Com, Inc. Counterclaim at p. 11). Likewise, Defendants' Motion for Summary Judgment asks the Court to declare America Dot Com, Inc. the sole and exclusive owner of "America.com".

Defendants present no evidence to suggest that America Dot Com, Inc. owns "America.com". Instead, Greenidge provides an unsworn "Declaration in Support of Defendants' Motion for Summary Judgment" in which he merely states that he transferred the registration of "America.com" from PSS to America Dot Com, Inc. Greenidge never declares that America Dot Com, Inc. owns "America.com" and provides no clues as to how ownership (as opposed to registration) of the domain name may have transferred from himself to America Dot Com, Inc. Furthermore, it is undisputed that "America.com" is now, once again, registered to PSS. Thus, if Defendants' argument is that registration of a domain name constitutes ownership, then PSS owned "America.com" at the time of Kuhn's investment and still owns it today.

Because Defendants offer no evidence to support America Dot Com, Inc.'s claim, their Motion for Summary Judgment as to the Counterclaim should be denied. Furthermore, Defendants never ask this Court to declare Greenidge the owner of "America.com" in any of their pleadings or motions. Thus, neither Greenidge nor America Dot Com, Inc. should be declared the owner of "America.com" pursuant to Defendants' Motion for Summary Judgment.

## Conclusion

The parties' pleadings, depositions, and affidavits on file in this action present genuine issues of material fact which preclude entry of summary judgment as a matter of law. A reasonable jury

10

could return a verdict in favor of Plaintiffs as to each count of the Amended Complaint. Defendants have failed to carry their substantial burden of proving that no genuine issue of fact exists. Furthermore. the competing version of facts presented by the parties requires determination by a trier of fact.

Based on the factual disputes presented by the parties in their pleadings, discovery and affidavits. Defendants' instant Motion for Summary Judgment as to Plaintiff's claims and as to Defendants' Counterclaims should be denied.

WHEREFORE. based on the foregoing. Plaintiffs respectfully request that this Court enter an Order denying Defendants' Motion for Summary Judgment as to Plaintiffs' claims and as to Defendants' Counterclaims.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by mail upon: William E. Davis. Esq. and Jill A. Cook-Edwards. Esq.. Buchanan Ingersoll. P.C.. Attorneys for America Dot Com, Inc. and Jeremy Greenidge. Bank of America Tower. Suite 2100. 100 S.E. Second Street, Miami. FL 33131 on March $23^{d}$ 2001.

LAW OFFICES OF JOHN C. RAYSON
2400 East Oakland Park Blvd.
Fort Lauderdale. FL 33306
(954) 566-8855
(954) 566-8902 (facsimile)
Rayson2000@aol.com

By: _Thus P. Mass_

Thomas P. Moss
FL Bar No.: 0153923

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6172-CIV-ZLOCH

PSS INTERNET SERVICES, INC,
a Florida corporation and
GEORGE KUHN, individually,

      Plaintiffs,

v.

JEREMY GREENIDGE, individually
and AMERICA DOT COM, INC.,
a Tortola, British Virgin Islands
corporation,

      Defendants.

_____/

## AFFIDAVIT OF GEORGE KUHN IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

State of New York

County of: New York

      Before me, the undersigned authority, personally appeared GEORGE KUHN who being

duly sworn deposes and states as follows:

      1. I am a Plaintiff in this action and hereby submit this affidavit in opposition to the

Motion For Summary Judgment filed by Defendants Jeremy Greenidge ("Greenidge") and

America Dot Com, Inc. ("America Dot Com"). My affidavit is based upon my own personal

knowledge. I am competent to testify as to the matters contained herein.

      2. I am a twenty-five percent (25%) shareholder and director of PSS Internet Services,

Inc. ("PSS"), a Florida corporation.

      3. In or about October, 1994, I invested $25,000 in PSS in exchange for 125 shares of

1

EXHIBIT "A"

PSS stock and a seat on PSS's board of directors. At the time of my investment, I was specifically promised a seat on the board of directors by PSS president, Greenidge, and treasurer, Harold Millan ("Millan"). My seat on the board of directors was part of the consideration for my investment and I would not have made the investment but for Greenidge and Millan's promise to make me a director of PSS.

4    At the time of my investment in PSS, Greenidge promised me that by buying into PSS. I would be buying into the Internet domain name "America.com", which Greenidge stated would become "some pretty pricey real estate." During Greenidge's solicitation of my investment, he convinced me that Internet domain names would become very valuable and that my investment would be protected by the value of the domain name "America.com". I understood Greenidge's promise to mean that "America com" belonged to PSS as that was the only reasonable interpretation of his promise. Greenidge made that promise to induce me to invest in PSS and that promise did, in fact, induce me to invest $25,000 into PSS. I would not have made the investment but for Greenidge's promise that by investing in PSS. I would be buying into "America com" and that its value would protect my investment.

5.   At the time Greenidge and Millan solicited my investment in PSS, Millan represented to me that he and Greenidge each owned approximately one third (1/3) of the issued shares of PSS and that, upon my purchase of one quarter (1/4) of the total shares, no individual shareholder would have a majority share and be able to affect a change in the corporation. This representation was material to me because, although I knew and trusted Millan. I did not know Greenidge very well. I did not want my investment to be controlled by Greenidge alone and would not have made the investment had I known that Greenidge owned fifty-one percent (51%)

2

of the shares (as alleged by Greenidge in his Motion For Summary Judgment). I would not have made my investment but for Millan's representation that he and Greenidge each owned approximately one third (1/3) of the shares of PSS.

6. At no time before or during my investment into PSS, did Greenidge, Millan or anyone else mention a "license agreement" referred to by Greenidge and Millan in their affidavits. In fact, PSS operated as "America.com" and PSS subscribers referred to PSS as "America.com". If a license agreement did exist at the time of my investment, Greenidge and Millan withheld that information from me in order to secure my investment.

7. Greenidge, Millan and myself held directors meetings in which the three of us discussed PSS company business. All three of us referred to such meetings as directors meetings.

8. After I made my investment in PSS, I assumed that Greenidge and Millan would include my name as a director on the corporate paperwork filed with the Florida Secretary of State. I did not realize that Greenidge failed to include my name as a director on the corporate paperwork until January 14, 2000.

9. I have referred to myself as a director of PSS both before and during this litigation because I entered into an agreement with Greenidge and Millan whereby in exchange for my investment I would become a shareholder and director of PSS. I performed pursuant to that agreement by investing $25,000 and Greenidge and Millan performed by issuing my stock certificate and treating me as a director. Therefore, regardless of the corporate reinstatement filed with the State of Florida on September 24, 1997 (Defendants' Exhibit 2 to Exhibit "B" attached to Defendants' Motion For Summary Judgment), I maintain that I have been a director

3

of PSS since my investment in 1994

10.    After PSS was administratively dissolved in 1998, PSS continued to operate its Internet website as "America.com", contrary to Greenidge's declaration in support of his Motion For Summary Judgment. Attached to Amended Complaint in this action as Exhibit "C" is a March 1, 2000 printout of "America.com's" website, accessible to the public worldwide. Exhibit "C" establishes that PSS continued to operate as "America.com" even after this action was filed. Exhibit "C" establishes on its face that as of March 1, 2000, "the America.Com community is written and maintained by PSS Internet Services, Inc " (emphasis in original).

11.    In November of 1999, Millan informed me Greenidge had registered "America.com" to a Tortola, B.V.I. corporation called America Dot Com  I verified this fact by checking Network Solutions, Inc 's ("NetSol") website.  Millan also told me that Greenidge was attempting to auction and sell "America.com" on GreatDomains.Com' s website.  I verified this fact also

12.  Since Greenidge failed to inform me of his actions, I immediately contacted NetSol, GreatDomains Com and Greenidge's attorney to inform those parties that Greenidge did not have PSS's board of director's consent to transfer, auction or sell "America com".  NetSol agreed to transfer "America.com" back to PSS pending the outcome of this action.  NetSol further agreed to "lock" the domain name so that nobody could transfer the domain name without a Court Order or settlement of this action.  As of this date, "America.com" remains "locked" and registered to PSS.

13  In January of 2000, I contacted Greenidge, Millan and Charles Henderson, the other three shareholders of PSS, for the purpose of scheduling a shareholders' meeting.  All four

4

shareholders appeared by telephone for the January 14, 2000 meeting, although Charles Henderson could not remain on the conference call due to technical difficulties. At the meeting, we discussed how my interest in "America com" would be protected. Greenidge told me that he would put together a proposal and send it to me via electronic mail. During this meeting, Greenidge explained that he had transferred "America.com" to Tortola for tax advantages.

14. During the January 14, 2000 meeting, Greenidge stated that somebody in Michigan had attempted to register "America.com". Greenidge asked both Millan and myself to help him find out more about this person in Michigan.

15. Although during the January 14, 2000 meeting, Greenidge told me, for the first time, that he purported to own "America.com" personally, neither Greenidge nor Millan stated that I was not entitled to my 25% share of "America.com".

GEORGE KUHN

SWORN TO and subscribed before me on March 16th, 2001 by George Kuhn.

Notary Public
State of: New York

SHERYL D. LIMPERT
Notary Public, State of New York
No. 03 5072274
Qualified in New York County
Commission Expires Jan. 27, 2001
2003

Personally Known _____ or Produced Identification _____✓_____
Type of Identification Produced _U S_ _Passport_ _#. 150924117_

5